# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF RANCHO PALOS VERDES,<br><br>Defendant. | Case No. 2:17-cv-05718-JAK (PLAx)<br><br>**CONSENT DECREE**<br><br>**JS-6** |

WHEREAS, on August 1, 2017, California River Watch ("Plaintiff" or "CRW") filed a Complaint in this Court asserting it is an Internal Revenue Code section 501(c)3 nonprofit, public benefit corporation organized under the laws of the State of California, dedicated to protecting, enhancing, and helping to restore the surface waters and ground waters of California, including rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and to educating the public concerning environmental issues associated with these environs;

WHEREAS, the Complaint alleges City of Rancho Palos Verdes ("Defendant" or "the City"), organized under the laws of the State of California, owns and operates a

collection system for the purpose of collecting and conveying for treatment wastewater from residential, commercial, and industrial sources, subject to various federal and state regulatory requirements under the federal Water Pollution Control Act, 33 U.S.C. §§1251 *et seq*. ("Clean Water Act" or "CWA");

WHEREAS, on October 7, 2016, CRW served the City, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board") and the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Board") with a 60-day Notice of Violations and Intent to File Suit ("Notice Letter" or "Notice") alleging various violations of the CWA relating to the collection system;

WHEREAS, the City denies all of CRW's allegations that it is liable for any claims that were, or could have been, asserted against the City based upon the Notice Letter;

WHEREAS, the Parties have expended effort and resources in investigating and evaluating allegations and claims set forth in the Notice Letter, including the exchange of information regarding the collection system, as well as engaging in a negotiation and technical dialogue regarding settlement;

WHEREAS, the Parties now wish to resolve and settle all disputes, obligations, and purported or actual claims or causes of action, which may exist by and between CRW and the City, including without limitation any disputes, obligations, claims and/or causes of action that were or could have been asserted in or pursuant to the Notice Letter and have tentatively reached a settlement;

WHEREAS, on August 1, 2017, CRW filed a Complaint against the City in the United States District Court, Central District of California, Eastern Division (Civil Case No. 5:17-cv-01534) entitled, *California River Watch v. City of Rancho Palos Verdes*. ("Complaint");

WHEREAS, the Defendant denies all allegations set forth in the Complaint, and pursuant to Federal Rule of Civil Procedure Rule 4, has either filed an Answer or

motion under Rule 12 or will do so by November 5, 2107 or such other date as permitted by Court Rules or the Court;

WHEREAS, CRW and the City (collectively referred to herein as the "Parties") have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings; and

WHEREAS, all actions taken by the City pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question), and 33 U.S.C. §1365(a) (CWA citizen suit jurisdiction).

2. Venue is appropriate in the Central District Court pursuant to 33 U.S.C. §1365(c)(1), because the alleged violations purportedly occurred within this District. Venue is also proper because the City is located, and the alleged events or omissions giving rise to CRW's claims allegedly occurred in the this District. 28 U.S.C. §1391(b)(1),(2).

3. The Complaint is styled as a Complaint for Injunctive Relief, Civil Penalties and Declaratory Relief (Environmental-Clean Water Act 33 U.S.C. §1251, *et seq*.).

4. The Court shall retain jurisdiction over this matter for five years for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.   OBJECTIVES**

5. It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the CWA and to resolve those issues alleged by CRW

in its Complaint. In light of these objectives and as set forth fully below, the City and CWA agree to comply with the provisions of this Consent Decree.

## II. COMMITMENTS OF THE CITY

### A. ACTIONS BY THE CITY

6. The City shall perform the below-specified acts. The City reserves the right, in its sole discretion, to determine: (i) which persons shall perform any acts described herein, including contractors; and (ii) the scope and technical details of, and the manner to implement, such acts; and to the extent the Regional Water Quality Control Board is required to review and approve, work may be subject to review and approval by the Regional Water Quality Control Board (or such other regulatory agency as may, from time to time, exercise jurisdiction with respect to environmental matters under the Permit).

### B. CONDITION ASSESSMENT

7. Prior to the service of the Notice, the City and County had been conducting a condition assessment. Thus, the City has conducted a Sewer Collection System Investigation and Repair, a Condition Assessment and full Condition Assessment within the last 10 years according to the Pipeline Assessment and Certification Program ("PACP") system. The final repairs are being completed and documented. The County and City have been performing surface water condition assessments as part of their Condition Assessments, but they are not labeled in record-keeping as "surface water condition assessments." Upon receipt from the County of Los Angeles, the City will produce the remaining portion of its condition assessment reports, and records sufficient to document the remaining repairs pursuant to the condition assessment and full condition assessment have been performed according to the County's schedule. To the extent there are any sewer lines in the sewer collection system located sufficiently proximate to a surface water that, if defective, could allow exfiltration to that surface water, City will also produce records sufficient to show a surface water condition assessment was done.

7.a. Definitions

i. Condition Assessment: A report that comprises inspection, rating, and evaluation of the existing condition of a sewer collection system. Inspection is based upon closed circuit television ("CCTV") inspections for sewer lines; manhole inspections for structural defects; and inspections of pipe connections at the manhole. After CCTV inspection occurs, pipe conditions are assigned a grade such as the Pipeline Assessment and Certification Program ("PACP") rating system, developed by the National Association of Sewer Service Companies.

ii. A Full Condition Assessment: A Condition Assessment of all sewer lines in the sewer collection system.

iii. Surface Water Condition Assessment: A Condition Assessment of sewer lines in the sewer collection system located sufficiently proximate to a surface water that if defective, could allow exfiltration to that surface water. Whether a line is "sufficiently proximate" will depend upon a number of factors including age, composition and PACP rating of the sewer line in question, the nature of the defect, soil types, and groundwater patterns.

iv. Surface Significantly Defective: A sewer pipe is considered to be Significantly Defective if its condition receives a grade of 4 or 5 based on the PACP rating system. The PACP assigns grades based on the significance of the defect, extent of damage, percentage of flow capacity restriction, and/or the amount of pipe wall loss due to deterioration. Grades are assigned as follows:

5 – Most significant defect

4 – Significant defect

3 – Moderate defect

2 – Minor to moderate defect

1 – Minor defect.

7.b. Documents to be Provided

i. If there are any sewer lines in the City's sewer collection system in the vicinity of Abalone Cove park and trail within the City of Rancho Palos Verdes maintained by the City ("Abalone Cove") sufficiently proximate to surface water and determined by the City to pose a risk of exfiltration to that surface water which have not been repaired or replaced, within two (2) years after this consent decree, the City shall repair or replace all sewer lines in such City sewer collection system sufficiently proximate to a surface water and determined to pose a risk of exfiltration to that surface water which have been closed circuit television inspected ("CCTV") within the past ten (10) years and were rated as Significantly Defective or given a comparable assessment.

ii. Within six (6) months of the Effective Date of the Consent Decree, the City shall provide CRW with documentary evidence that it or the County has appropriately scheduled activities to monitor and manage such defective pipe(s), or has repaired or has scheduled the repair of all sewer lines found to be Significantly Defective.

iii. Within six (6) months of the Effective Date of the Consent Decree, the City shall provide CRW with documentary evidence that it has been making efforts to identify deficiencies associated with moderate defects in the City's sewer collection system in the vicinity of Abalone Cove and is monitoring its system, repaired or scheduled the repair or replacement of sewer pipe segments containing defects with a rating of 3 based on the PACP rating system, if such defect resulted in a sanitary sewer overflow ("SSO"), or, if in the City's discretion, such defects are in close proximity to Significantly Defective segments that are in the process of being repaired or replaced; sewer pipe segments which contain defects with a rating of 3 that are not repaired or replaced within five (5) years after completion of the Surface Water Condition Assessment are to be re-CCTV'd every ten (10) years to ascertain the condition of the sewer line segment. If the City determines that the grade-3 sewer pipe segment has deteriorated and needs to be repaired or replaced, the City shall perform regular

maintenance, or schedule repairs or replacement within two (2) years after the last CCTV cycle.

iv. The City shall continue to cooperate in the County's performance of a Condition Assessment of all sewer at least every ten (10) years, as is already required.

**C.     SSO REPORTING AND RESPONSE**

8. The City contracts with the County for its SSO Reporting and Response. The City shall ask the County to modify its Backup and SSO Response Plan to include in its reports submitted to the California Integrated Water Quality System ("CIWQS") the following items:

   a. The method or calculations used for estimating total spill volume, spill volume that reached surface waters, and spill volume recovered;
   b. For Category I and II Spills, a listing of nearby residences or business owners who have been contacted to attempt to establish the SSO start time, duration, and flow rate, if such start time, duration, and flow rate have not been otherwise reasonably ascertained, such as from a caller who provides information that brackets a given time that the SSO began; and,
   c. Taking of photographs of the manhole flow at the SSO site using either the San Diego or Central Coast Method array (if applicable to the SSO), or other photographic evidence that may aid in establishing the spill volume.

9. The City shall implement and place in its Sewage System Overflow Response Plan ("SSORP") the following:

   a. A plan to reduce the potential for human health risks and adverse environmental impacts that are associated with an SSO event that include the following:
      i. In any area within the City in which the County or City cannot confirm that all of the infectious materials, if any, from a SSO have been removed or mitigated, the City (for City maintained areas

[Abalone Cove system]) shall post appropriate public notification signs and place barricades to keep vehicle and pedestrians away from contact with spilled sewage until it has been deemed cleaned as described below. For example, signs will be posted at creeks and streams, if any, that have been contaminated as a result of an SSO and at visible access locations until the risk of exposure has subsided to acceptable background levels. Warning signs should be checked every day to ensure that they are still in place. Major spills warrant broader public notice. For major spills within the City, the City, if it is a City maintained area, shall contact local media when significant areas may have been contaminated by sewage and may pose a danger to public health.

  ii. The signs and other public notices will not be removed until City, the Health Department or Sanitation District has determined there is no further risk to public health and the environment.

10. The water quality sampling procedures shall include:
    a. Samples should be collected as soon as safely possible after the discovery of the SSO event as follows:
        i. Pursuant to the Statewide WDR, Section D subsection 7, the City or its designee shall sample to determine the nature and extent of any SSO whenever there is an SSO discharged to a surface where it poses a risk to public health and where it is required by the WDR, Section D, subsection 7.
        ii. If the SSO poses an imminent and substantial endangerment to public health or the environment that cannot be fully mitigated by the City's current SOPs, the City shall consult a qualified biologist, health care specialist or equivalent professional to mitigate the effects of the SSO on the environment.

11. The City shall, on its website, create a link from the website to the CIWQS home page including a county or city phone number at which members of the public can report to the City or County a sanitary sewer overflow observed in the City. On an annual basis for a period of three (3) years from the Effective Date of this Consent Decree the City shall provide CRW with the results of its weekly fecal testing and ocean testing already being performed.

### D. LATERAL INSPECTION/REPAIR PROGRAM

12. The City shall develop for public notice, and place on its website within six (6) months "recommended best practices for maintaining your laterals" for the benefit of property owners who are responsible for their own laterals. It will remind private property owners of their responsibility for their laterals.  Such recommended best practices shall include reasonable measures for property owners to maintain, repair and inspect their own laterals. The recommendations will include recommended inspections upon any of the following occurring:

   a. Transfer of ownership of the property if no inspection/replacement of the sewer lateral occurred within ten (10) years prior to the transfer;
   b. The occurrence of two (2) or more SSOs caused by the private sewer lateral within two (2) years;
   c. A change of the use of the structure served (a) from residential to non-residential use, (b) to a non-residential use that will result in a higher flow than the current non-residential use, or (c) to non-residential uses where the structure served has been vacant or unoccupied for more than three (3) years;
   d. Upon replacement or repair of any part of the sewer lateral;
   e. Upon issuance of a building permit with a valuation of $50,000.00 or more.

### E. CHEMICAL ROOT CONTROL

13. The City does not presently use chemical root control. The City shall post on its website "best practices when using chemical root control" for the benefit of private property owners responsible for their own laterals. The City shall ask County agents using chemical root control within the City's MS4 system to use chemicals approved by the Los Angeles County Sanitation District for any chemical root control as recommended by the Regional Water Quality Control Board, and ask that all application comply with the recommendations of the manufacturer of the chemical and as required by Cal-OSHA. Within one (1) year after this Consent Decree, the City shall develop its posting on its website "recommended best practices when using chemical root control" for the benefit of private property owners responsible for the maintenance and repair of their own laterals. It will include recommended methods for the application of root control agents that lessen the incident of these agents escaping the collection system and keeping the public informed. If the City implements its own chemical root control within the next five (5) years, it will also use these protocols, to the extent they do not conflict with any Sanitation District Ordinance, Cal-OSHA rule, product manufacturer instruction or Los Angeles County, California or federal law by which City is bound. These protocols will also be included in these recommended best practices when using chemical root control for the benefit of property owners who are responsible for their laterals:

    a. Blocking the line upstream and down-stream of the area of application;

    b. Flushing out the line after application and removing the residue before reopening the line;

    c. Random sampling of the line after flushing to insure the protocols eliminate >90% of root control agents; and/or using root control agents that have a half-life of fifteen (15) days or less and the breakdown products are non-toxic to aquatic plants or animals;

d. Developing and implementing best management practices to preclude the escape of the root control agent from the sewer line;
    e. City will recommend property owners maintain records that include identifying the PACP rating in the section being treated; a map identifying locations where treatment occurs; the chemical(s) used including the MSDS sheets; and the amounts applied. If the City begins chemical root control, it will also perform such record keeping;
    f. Not applying any root control agent to any sewer line that has a known PACP rating of 4 or 5 unless the property owner applying chemical root control can ensure that none of the root control agent will escape the sewer line through any line defect; and
    g. Not knowingly applying any root control agent in any location where groundwater can be contaminated via infiltration or exfiltration.

14. If the City begins using chemical root control, the City shall post on its website a map showing where a root control agent may be used throughout the sewer system and provide a contact number for the City to respond to questions.

15. If the City begins using chemical root control, it will similarly update its City sewer system management plan ("SSMP") to include these protocols.

**F.    FEES AND COSTS**

16. Within ten (10) calendar days after the Effective Date of this Consent Decree and approval by the Court, the City shall mail CRW the sum of fifty-thousand dollars ($50,000). Payment shall be made to CRW in the form of a single check (or two checks which combined total $50,000) payable to "California River Watch" and mailed to the Law Office of Jack Silver, 708 Gravenstein Highway North, # 407, Sebastopol, CA 95472. Said payment shall constitute full and complete satisfaction of all costs of litigation and attorneys' fees incurred by CRW that have or could have been claimed in connection with this matter up to and including the Effective Date of the Consent Decree, and for CRW's expert and attorneys' fees and costs for monitoring and

enforcing the City's compliance with the ongoing obligations under this Consent Decree up to and including the Termination Date.

## III. COMMITMENTS OF PLAINTIFF

17. Within three days of the final signature of this Consent Decree by the Parties, CRW shall file a Notice of Tentative Settlement and Notice of 45-Day Review Period in the United States District Court for the Central District of California ("District Court").

18. Plaintiff shall submit this [Proposed] Consent Decree to EPA and the U.S. Department of Justice ("DOJ") within three days of obtaining Parties' attorneys signatures approving as to form (with client signatures to follow), or at the latest three (3) days after the final signatures of the Parties, consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by the certified return receipts, copies of which shall be provided to Defendant if requested. In the event that EPA or DOJ object to entry of this [Proposed] Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

19. Plaintiff shall file this Consent Decree with the District Court within three (3) days of the Effective Date. CRW is responsible for notifying Defendant of the District Court's entry of the Order dismissing these claims with prejudice. Such notification can be satisfied by the Central District of California's Case Management/Electronic Case Filing ("CM/ECF") notification to the Parties that the Order was executed and entered by the District Court.

## IV. EFFECTIVE DATE AND TERMINATION DATE

20. The term "Effective Date," as used in this Consent Decree, shall mean the date on which the Parties receive notice that the Court approved the fully executed Consent Decree.

21. The "Termination Date" of this Consent Decree is the date that all of the requirements under Section II are completed by the City or five (5) years from the date of full execution and court approval of this Consent Decree, whichever is earlier.

## V. **<u>DISPUTE RESOLUTION</u>**

22. This Court shall retain jurisdiction over this matter for five (5) years for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

23. Any disputes between CRW and the City concerning any alleged breach of this Consent Decree shall be subject to the following dispute resolution procedures. Failure to satisfy the payment condition in Section II is a substantial breach of this Consent Decree and relieves CRW of its obligations under this Consent Decree:

    a. <u>Good Faith Negotiations.</u> CRW and the City shall make good faith efforts to resolve informally any alleged breach of the Consent Decree. If informal efforts to resolve the alleged breach are unsuccessful, that Party shall provide written notice of the alleged breach and that Party's intent to initiate the dispute resolution procedure of this Section. The notice shall include a recitation of all facts and circumstances giving rise to the dispute, including the particular provisions of the Consent Decree alleged to have been breached.

    b. <u>Mediation.</u> If the dispute is not resolved by the Parties within thirty (30) days after such notice is given, such dispute shall be submitted to mediation before a mutually agreeable neutral mediator. The Parties shall each bear their own costs and attorney's fees incurred in connection with such mediation.

    c. <u>Waiver.</u> By agreeing to these dispute resolution provisions, the Parties understand that they are waiving certain important rights and protections

that otherwise may have been available to each of them if a dispute between them were determined by judicial action including, without limitation, the right to a jury trial, and certain rights of appeal. Other than the remedies contained within this Consent Decree including dispute resolution and specific performance of the terms of this Consent Decree, there are no other remedies. The Parties specifically agree that there is no basis within this Consent Decree or within the contemplation of the Parties to support a claim for consequential damages due to any form of breach.

## VI. <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

24. <u>Release</u>. It is the intent of the Parties that the execution of this Consent Decree constitutes a full and complete satisfaction of all rights, claims and demands by CRW against the City with respect to any and all allegations and claims made in the Notice Letter under the Clean Water Act. CRW on behalf of itself and any and all of its agents, representatives, successors, members, and assigns, except as otherwise provided for herein does hereby absolutely, fully and forever release, relieve, remise and discharge the City and its past and present employees, officers, directors, attorneys, and the predecessors, successors, and assigns of any of them, from all causes of actions, claims, damages (including punitive damages), demands, debts, actions, attorneys' fees, costs of suit, and liabilities of every kind or nature whatsoever, arising exclusively out of the specific claims asserted in the Notice Letter under the Clean Water Act concerning the operation of the sewage collection system. The release provided for herein shall be valid and effective whether the claims, causes of action, or liability hereby released (i) were known or unknown, suspected or unsuspected, (ii) were based in contract, tort, statute, or otherwise, or (iii) arise at law or in equity. The release shall survive the termination of this Consent Decree, whether by satisfaction of the terms and conditions hereof or operation of law.

25. <u>Covenant Not to Sue</u>. For the period beginning on the Effective Date and ending after five (5) years, CRW agrees that neither CRW, its officers, executive staff, members of its governing board nor any organization under the control of CRW, its officers, executive staff, or members of its governing board, will file any lawsuit against the City seeking relief for alleged violations of the Clean Water Act. CRW further agrees that, beginning on the Effective Date and ending after five (5) years, CRW will not support other lawsuits by providing financial assistance, personnel time or other affirmative actions against the City that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge the City's compliance with the Clean Water Act. This Not to Sue provision shall survive the termination of this Consent Decree.  This Not to Sue provision shall not effect either Party's right to enforce this Consent Decree.

## VII.   MISCELLANEOUS PROVISIONS

26. <u>No Admission</u>. The Consent Decree is the direct result of a compromise of disputed allegations and claims. As such, this Consent Decree shall not, for any purpose, be considered as an admission of liability by the City, nor shall the payment of any sum of money in consideration for the execution of this Consent Decree constitute or be construed as an admission of any liability by the City, which expressly denies any such liability or wrongdoing.

27. <u>Delays in Schedule Implementation.</u> In the event implementation by the City of the remedial measures set forth Section II of this Consent Decree does not occur by the agreed to dates, despite the timely good faith efforts of the City to acquire any necessary approvals and/or permits, or due to factors unforeseen at the time this Consent Decree was entered into, the City agrees to notify CRW in writing as soon as practicable after the anticipated delay becomes apparent, and in any case except in a case of force majeure described below, not less than twenty (20) days prior to any deadline set forth in Section II, and shall describe the reasons for the anticipated delay.

28. <u>Force Majeure.</u> The City shall not be deemed in default or breach of this Consent Decree by reason of any event which constitutes a force majeure. For purposes of this Consent Decree, a force majeure is defined as any event arising from causes beyond the reasonable control of the City or its contractors that delay or prevents performance. This includes, without limitation, acts of God, acts of war, acts of terrorism, fire, explosion, extraordinary weather events, restraint by court order or public authority, or other causes beyond the City's reasonable control. Neither increased costs nor economic hardship shall constitute a force majeure.

29. <u>Notices.</u> All notices, consents, approvals, requests, demands and other communications (collectively, "Notice") which the parties are required or desire to serve upon or deliver to the other Party shall be in writing and shall be given by nationally – recognized overnight courier, by certified United States mail, return receipt requested, postage prepaid, addressed as set forth below, or by facsimile or electronic mail addressed as set forth below:

| | |
|---|---|
| If to CRW: | Jack Silver, Esq. |
| | Law Office of Jack Silver |
| | 708 Gravenstein Highway North, #407 |
| | Sebastopol, CA 95472 |
| | Tel: (707) 528-8175 |
| | Email: lhm28843@sbcglobal.net |
| If to the City: | Doug Willmore, City Manager |
| | 30940 Hawthorne Blvd. |
| | Rancho Palos Verdes, CA 90275 |
| | |
| | David Aleshire, City Attorney |
| | Glen E. Tucker, Esq. |
| | Aleshire & Wynder |
| | 18881 Von Karman Ave. # 1700 |
| | Irvine, CA 92612 |

The foregoing addresses may be changed by Notice given in accordance with this Section. Any Notice sent by mail shall be deemed received two (2) days after the date of mailing. Any Notice sent by electronic mail shall be deemed received upon electronic transmission thereof provided sender does not receive electronic notice of non-delivery. Any Notice sent by overnight courier service shall be deemed received on the day of actual delivery as shown by the confirmation of delivery by the messenger or courier service. If the date of receipt of any Notice to be given hereunder falls on a weekend or legal holiday, then such date of receipt shall automatically be deemed extended to the next business day immediately following such weekend or holiday for purposes of calculating time periods commencing upon the date of service.

30. Attorneys' Fees. Other than the payment to CRW under Section II (E) each Party shall bear its own past and future attorneys' fees and costs relating to the subject matter of this Consent Decree.

31. Parties' Acknowledgment of Terms. This Consent Decree has been carefully and fully read and reviewed by CRW, the City, and their respective counsel, if any, who hereby represent that the contents of this Consent Decree are understood, and agree that this Consent Decree is binding on each party or its respective predecessors, successors, and assigns and as described above.

32. Interpretation and Applicable Law. This Consent Decree shall be construed and interpreted in accordance with the laws of the United States and the State of California without regard to principles of conflicts of law. This Consent Decree shall be interpreted and construed as a whole, according to its fair meaning and not strictly for or against any Party, and without regard to which Party drafted the Consent Decree. All of the promises, representations, and warranties contained in this Consent Decree survive the execution of this Consent Decree.

33. No Assignments. Each Party to this Consent Decree represents and warrants that it has not assigned, transferred, hypothecated, or sold to any third person or entity, any of the rights or obligations released by or entered into under this Consent Decree.

34. Counterparts. This Consent Decree may be executed in multiple counterparts by the attorneys and Parties, each of which shall evidence one and the same agreement.

35. Headings. The headings used in this Consent Decree are for convenience of reference and shall not be used to define any provision.

36. Entire Consent Decree in Writing. This Consent Decree constitutes the entire agreement between the Parties hereto with respect to the subject matter set forth herein and supersedes all previous or contemporaneous negotiations, commitments (oral or written), and writings with respect to the subject matter set forth herein.

37. Modification or Amendment. This Consent Decree or any of its provisions may be modified or amended only by written agreement executed by all Parties to this Consent Decree.

38. Severability. The invalidity or unenforceability of any provision of this Consent Decree shall in no way affect the validity or enforceability of any other provision. If, in any action before any court or other tribunal or competent jurisdiction, any term, restriction, covenant, or promise is held to be unenforceable for any reason, then such term, restriction, covenant, or promise shall be deemed modified to the extent necessary to make it enforceable by such court or other tribunal and, if it cannot be so modified, that this Consent Decree shall be deemed amended to delete here from such provision or portion adjudicated to be invalid or unenforceable, and the remainder of this Consent Decree shall be deemed to be in full force and effect as so modified. Any such modification or amendment in any event shall apply only with respect to the operation of this Consent Decree in the particular jurisdiction in which such adjudication is made.

39. Representations and Warranties. This Consent Decree is given voluntarily, free of undue influence, coercion, duress, menace, or fraud of any kind. No Party, nor any officer, agent, employee, representative, or attorney of or for any Party, has made any statement or representation to any other Party regarding any fact relied upon in entering this Consent Decree, and no Party is relying upon any statement,

representation, or promise of any other Party, nor of any officer, agent, employee, representative, or attorney of or for any Party, in executing this Consent Decree or in making the settlement provided herein, except as expressly stated in this Consent Decree.

40. No Third Party Beneficiaries. This Consent Decree is not intended to confer any rights or obligations on any third party or parties, and no third party or parties shall have any right of action under this Consent Decree for any cause whatsoever. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

41. Authority. Each of the persons signing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute the Consent Decree on behalf of the entity and to bind it to all of the terms of this Consent Decree.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO FORM:
Dated: October 3, 2017 　　　　　　　　**ATTORNEYS FOR CALIFORNIA RIVER WATCH**

/s/ David Weinsoff
/s/ Jack Silver
DAVID WEINSOFF,
JACK SILVER

| | | |
|---|---|---|
| Dated: October 3, 2017 | | **ATTORNEYS FOR THE CITY OF RANCHO PALOS VERDES** |

/s/ Glen E. Tucker
GLEN E. TUCKER
Aleshire & Wynder, LLP

SO STIPULATED:

**CITY OF RANCHO PALOS VERDES**

/s/
Brian Campbell, Mayor

**CALIFORNIA RIVER WATCH**

10/4/2017   /s/
Larry Hanson, Board President for California River Watch

**IT IS SO ORDERED**.

Dated : December 7, 2017

_____
JOHN A. KRONSTADT
UNITED STATES DISTRICT JUDGE